35 N.J. Super. 11 (1955)
113 A.2d 59
FRANK J. TAGMIRE AND NATHAN WOLFSON, PLAINTIFFS-CROSS-APPELLANTS,
v.
THE CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; MEREDITH B. KERSTETTER, ASSISTANT DIRECTOR OF PUBLIC SAFETY OF THE CITY OF ATLANTIC CITY, AND DR. SAMUEL L. SALASIN, HEALTH OFFICER OF THE CITY OF ATLANTIC CITY, DEFENDANTS-CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1955.
Decided March 23, 1955.
*12 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Isaac C. Ginsburg argued the cause for plaintiffs-cross-appellants.
Mr. Chaim H. Sandler argued the cause for defendants-cross-respondents (Mr. Murray Fredericks, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Involved in this appeal is the right of honorably discharged veterans to hawk, peddle or vend on the public beaches of Atlantic City. Defendants appeal from that part of the order of the Chancery Division entered in favor of plaintiffs declaring invalid section 16 of Atlantic City Ordinance No. 19 regulating hawkers, peddlers and vendors; and ordering the issuance of a hawker's, peddler's *13 and vendor's license to plaintiff Wolfson upon his compliance with the remaining provisions of the ordinance. Plaintiffs cross-appealed from that part of the order holding the ordinance valid in all other respects.
Plaintiffs Tagmire and Wilson are respectively honorably discharged veterans of World Wars I and II. Each holds a hawker's, peddler's and vendor's license issued by the Clerk of Atlantic County pursuant to N.J.S.A. 45:24-9 et seq. That statute provides that every honorably discharged soldier, sailor, marine, nurse or army field clerk who was in the active military or naval service of the United States in either of the two World Wars or certain other wars "shall have the right to hawk, peddle and vend any goods, wares or merchandise or solicit trade within this State, by procuring a license for that purpose to be issued in the manner and under the conditions hereinafter in this article prescribed: * * *." R.S. 45:24-10 directs that such license shall, upon application, be issued by the clerk of the county of the veteran's residence if the veteran has been honorably discharged and has resided within the State for at least six months and in the county for at least three months immediately preceding the application.
R.S. 45:24-9 was tested in Strauss v. Borough of Bradley Beach, 117 N.J.L. 45 (Sup. Ct. 1936), affirmed per curiam, 118 N.J.L. 561 (E. & A. 1937), a case dealing with a borough ordinance which prohibited all peddling. The borough contended that the statute was unconstitutional. In reversing Strauss' conviction for peddling the court said:
"There is no doubt we think of the purpose of the statutes. It was to class veterans of the various wars as a body and to entitle them to a privilege of peddling throughout the state regardless of the action of municipalities, whether such action took a prohibitive form or a regulative form. The statute is applicable to the state generally, making no exceptions, and if in conflict with a municipal ordinance the latter must cease to be effective." (117 N.J.L., at page 46)
L. 1950, c. 156, amended R.S. 45:24-9 to provide that "hawking, peddling and vending hereafter may be regulated by municipal ordinance on public boardwalks and public *14 beaches." L. 1952, c. 344, extended this amendment to encompass "public boardwalks, public beaches, streets and highways."
The effective date of the 1950 amendment was May 31, 1950. Shortly thereafter and on July 13, 1950, the governing body of Atlantic City adopted Ordinance No. 19 "providing for the regulation and licensing of hawkers, peddlers and vendors, imposing license fees and providing penalties for the violation thereof." It is altogether clear that the ordinance was introduced and adopted pursuant to the provisions of the 1950 amendment, for the preamble recites the fact that L. 1950, c. 156, gave municipalities the right to regulate hawking, peddling and vending on the public boardwalk and public beaches by municipal ordinance. And section 5 of the ordinance, requiring application for a municipal license, as well as section 7 which provides that no license shall be issued unless the assistant director of public safety is satisfied that the applicant is honest, of good moral character, and the holder of a valid, subsisting license issued by the county clerk, both refer to N.J.S.A. 45:24-9 et seq. There can therefore be no question that the Atlantic City ordinance was adopted under the provisions of R.S. 45:24-9, as amended by L. 1950, c. 156, and not pursuant to N.J.S.A. 40:52-1(c) which empowers a governing body to make and enforce ordinances to license and regulate, among others, hawkers, peddlers and itinerant vendors of merchandise.
The scope and reach of the ordinance are apparent from a brief summary of some of its main provisions. Section 1 provides that no person shall hawk, peddle or vend any ice cream, food, beverages, confections or merchandise on the public beaches of Atlantic City without first having obtained a license from the assistant director of public safety. Section 5 requires a written application under oath, setting forth certain information, including whether the applicant had ever been convicted of a crime involving moral turpitude, whether he holds a license issued by the county clerk pursuant to R.S. 45:24-9 et seq., and the type of product or commodity he intends to sell. The application is to be accompanied *15 by the applicant's photograph and fingerprints. Section 6 calls for an investigation of every application by the assistant director of public safety, and he is invested with "sole discretion as to the granting and denial of applications for licenses, in accordance with the standards, rules and conditions herein set forth." As already noted, under section 7 no license is to be issued by the assistant director unless he is satisfied that the applicant is honest, of good moral character, and the holder of a valid, subsisting license issued by the county clerk. Licenses are granted for a period of one year from July 1 and are not transferable without the consent of the assistant director (section 8). The annual license fee is $3.00 (section 9); and every licensee is required to wear and permanently display a badge issued by the municipality while he is engaged in hawking, peddling or vending (section 11). Section 14 gives the assistant director the power, upon his own motion or the written complaint of any person, to investigate the actions of any licensee and, after notice and hearing, to revoke or to suspend the license for all or less than the unexpired license period, where the licensee is found guilty of certain designated misconduct or violations. He may also summarily suspend the license where the offense is deemed by him detrimental to the public health, safety or welfare, provided a hearing is afforded within 15 days thereafter. Section 15 prohibits hawking, peddling or vending upon the public boardwalk. Section 16 limits the number of licenses to 100, "which number is deemed sufficient to meet the public need and prevent the creation of a public nuisance on the beaches of the municipality, and the consequent hazards to the health, safety and welfare of those persons who use the beach and ocean for health and recreational purposes." Section 19 fixes the conventional penalties for violation of the ordinance.
Plaintiffs claim the ordinance is illegal, unconstitutional, and violative of the rights of veterans holding licenses issued to them by the county clerk. By their complaint they demand judgment restraining the municipality, its agents and officers, from arresting, prosecuting, or giving orders for the arrest *16 and prosecution of plaintiffs for hawking and peddling beverages upon the beach of Atlantic City; enjoining the assistant director of public safety to return to plaintiff Wolfson the permit issued to him to peddle and hawk merchandise, or to issue a new permit for that purpose; and declaring the ordinance invalid or construing it with reference to the right to limit the number of licenses and the right of the assistant director to issue permits or licenses thereunder.
The complaint and its annexed affidavits reveal that plaintiff Tagmire has peddled merchandise on the beach at Atlantic City every summer since 1930, and has been issued a city license to hawk, peddle and vend since the adoption of the 1950 ordinance. Plaintiff Wolfson has peddled ice cream on the beach since 1945. Although he applied for a city license in 1953 and again in June 1954, none was issued to him. Instead, on July 9, 1954 the assistant director of public safety granted him a temporary permit to hawk, peddle and vend.
Both men had begun to sell beverages on the beach on July 3, 1954, using a portable dispensing tank for the purpose. On that date Tagmire was arrested for violating the ordinance, but the complaint was subsequently dismissed. Although Tagmire had been directed not to sell beverages, he continued to do so. On July 16 a policeman came onto the beach and demanded that Tagmire surrender his city license. He refused, was arrested, but was at once released. Half an hour later a board of health representative served him with a notice to close the premises which he used for storage and headquarters because of alleged violations of the sanitary code. Wolfson fared little better on July 16. The same police officer who had threatened Tagmire demanded from Wolfson that he exhibit his permit. When he did so the officer took it from him and threatened to arrest him if he went on the beach again. Half an hour later the health officer who served Tagmire with a notice told Wolfson he was not to sell drinks on the beach.
On the basis of their verified complaint, plaintiffs obtained an order to show cause and temporary restraining order enjoining *17 defendants from interfering with their peddling. On the adjourned return day, and after argument, the court filed its written conclusions and entered the order under appeal.
Plaintiffs launch their attack upon the ordinance as invalid on the basis of N.J.S.A. 45:24-9, the Strauss decision quoted above, and certain other decisions about to be mentioned. They contend that neither the 1950 nor the 1952 amendment of R.S. 45:24-9 gave municipalities the unrestricted right to regulate and license peddling by veterans. Finally, they make the specific, alternate argument that section 16, limiting the number of licenses to 100, is invalid because in excess of the power given municipalities by the statute, and sections 6 and 7 are void in that they vest unbridled discretion in the assistant director of public safety to issue or deny licenses. Defendants maintain that the entire ordinance is valid; that the power to license is an incident to the right to regulate; that the power to regulate includes the right to place a reasonable limitation on the number of licenses; and as for sections 6 and 7, the ordinance, read as a whole, provides legally sufficient norms and standards.
New Jersey has for many years recognized veterans of the American wars as persons in a class distinct from the mass of its citizens  a class which has rendered special service to the nation. N.J.S.A. 45:24-9 has been described as a method of rewarding those who have served in the protection of the country at large. Strauss v. Borough of Bradley Beach, 117 N.J.L. 45, 46 (Sup. Ct. 1936).
The policy of granting to honorably discharged veterans who are residents of New Jersey the right to hawk, peddle and vend anywhere in the State upon obtaining a license, has been in existence since 1904. L. 1904, c. 141. The class of veterans entitled to such a license has gradually been extended through the years by amendment.
The first attempt to whittle down this right came in 1949, when a representative of one of the counties fronting on the Atlantic Ocean introduced Senate Bill No. 118, which amended R.S. 45:24-9 by adding the following paragraph:
*18 "The provisions of this section shall not apply where hawking, peddling and vending is, or hereafter shall be, prohibited by municipal ordinance on public boardwalks and public beaches."
The amendment passed both Houses of the Legislature but was vetoed by the Governor who stated:
"It is conceivable that the vending of merchandise under certain circumstances may be desirable if properly regulated and controlled. In my judgment, our municipal governing bodies should be given a broader charge than either to permit unrestricted hawking, peddling or vending on the one hand, or to prohibit it entirely on the other." (Veto Messages of Hon. Alfred E. Driscoll, Governor of New Jersey, 1947 to 1949, Inclusive, p. 177.)
The Legislature took no further action on the vetoed bill.
In 1950 the same senator proposed Senate Bill No. 9, identical with the 1949 proposed amendment. The bill passed the Senate. It was three times amended in the Assembly, and in its final form, approved by both Houses and the Governor, read:
"Hawking, peddling and vending hereafter may be regulated by municipal ordinance on public boardwalks and public beaches." (L. 1950, c. 156)
The attempt to give municipalities the power to prohibit completely hawking, peddling and vending on public boardwalks and public beaches, in derogation of the broad right given honorably discharged veterans under the statute, had failed. The legislative history of Senate Bill No. 9 clearly shows that the final legislative intention was that municipalities might only regulate, not prohibit, such hawking, peddling and vending.
In 1952 N.J.S.A. 45:24-9 was further amended to allow regulation on not only public boardwalks and public beaches, but also on streets and highways. L. 1952, c. 344.
It may be noted, in passing, that there is presently pending before the Legislature a bill (Assembly No. 240) which would delete the provision of N.J.S.A. 45:24-9 permitting municipalities to regulate hawking, peddling and vending on public boardwalks, beaches, streets and highways and, instead, would authorize them to license such activity on any public beach *19 or boardwalk or in any public park of the State. This act would apply to all persons, including veterans, licensed under any other law to hawk, peddle and vend generally throughout the State. We do not in any way rely upon this pending legislation in arriving at our conclusion.
This exposition of legislative attempts to amend N.J.S.A. 45:24-9 shows that until the adoption of L. 1950, c. 156, municipalities had no authority either to prohibit or regulate hawking, peddling or vending by honorably discharged veterans holding a license from the county clerk. Strauss v. Borough of Bradley Beach, above. The 1949 attempt to empower municipalities to prohibit such activity on public boardwalks and public beaches was effectively vetoed. A similar attempt in 1950 ran into a series of Assembly amendments which resulted in giving municipalities the much more limited power of regulating hawking, peddling and vending on their public boardwalks and beaches  extended in 1952 to streets and highways. And finally, during the pendency of this appeal, we find legislation introduced to effect the very purpose which Atlantic City sought to achieve by the ordinance under review. The legislative intention to restrict municipalities to regulating veterans' hawking, peddling and vending to the limited area of the public boardwalks, beaches, streets and highways, and not to grant them the power to license or prohibit such activity under the existing law, could hardly be more clearly and effectively demonstrated than by referring to the legislative record of recent years.
We would arrive at the same result were we to limit ourselves strictly to a consideration of N.J.S.A. 45:24-9 as it presently appears on the statute books. The statute must be construed as a whole and, if possible, full effect given to all its parts. This is fundamental in statutory construction. It is often said that, generally, the power to regulate includes the power to license. But we do not read N.J.S.A. 45:24-9 as giving municipalities the right to both regulate and license.
Defendants would persuade us that the power to regulate hawking, peddling and vending on the public boardwalks, *20 beaches, streets and highways  given to municipalities by the 1950 and 1952 amendments to the statute  should be liberally construed in the light of the legislative and judicial history of the act and the injunction contained in Article IV, Section VII, paragraph 11 of the 1947 New Jersey Constitution that the provisions of any law concerning municipal corporations shall be liberally construed in their favor.
An examination of the legislative history preceding the 1950 amendment, as we have seen, lends no support to defendants' contention. Nor does the history of judicial decisions touching upon N.J.S.A. 45:24-9. The language of Strauss v. Borough of Bradley Beach, 117 N.J.L. 45, 46 (Sup. Ct. 1936), affirmed 118 N.J.L. 561 (E. & A. 1937), decided before the 1950 amendment and quoted earlier in this opinion, is broad enough to provide judicial contradiction of defendants' present claim, albeit the court was dealing with an ordinance prohibiting all peddling and there was no existing statutory provision permitting municipal regulation of peddling on the public boardwalks, beaches, streets and highways.
Here we should advert to some of the decisions cited in both briefs. Plaintiffs rely upon N.J. Good Humor, Inc., v. Board of Commissioners of Borough of Bradley Beach, 123 N.J.L. 21 (Sup. Ct. 1939), reversed 124 N.J.L. 162 (E. & A. 1940); Higgins v. Krogman, 140 N.J. Eq. 518 (Ch. 1947), affirmed 142 N.J. Eq. 691 (E. & A. 1948); City of Newark v. Germano, 20 N.J. Super. 143 (Cty. Ct. 1952), and Germano v. Keenan, 25 N.J. Super. 37 (Ch. Div. 1953). Defendants critically assess the pertinence of those cases.
In the N.J. Good Humor case the prosecutor sought a review of its conviction for violating an ordinance completely prohibiting peddling within the municipality. The then Supreme Court held that the prohibition did not invade prosecutor's constitutional rights. By way of dictum it stated that prosecutor's agent, a licensed veteran who did the actual peddling, was personally immune from the provisions of the ordinance, citing the Strauss case, but his immunity did not *21 extend to his employer. The Court of Errors and Appeals reversed, holding the ordinance invalid on constitutional grounds.
In the Higgins case, complainants sought an injunction against the mayor and chief of police of Wildwood from interfering with or molesting them in their hawking and peddling of merchandise. The local ordinance prohibited such activity on the beach. In the course of his decision granting the injunction, the vice-chancellor adverted to the holding of the Strauss case that the privilege granted to veterans could not be abrogated by ordinance, whether prohibitive or regulative. But as was pointed out in the affirming opinion of the Court of Errors and Appeals (142 N.J. Eq., at page 693), the vice-chancellor did not adjudicate the validity or invalidity of the ordinance  and this is clear from a reading of the Chancery opinion. The Court of Errors and Appeals also stated (Ibid., 142 N.J. Eq., at page 694) that it was not necessary to determine whether the ordinance was a reasonable exercise of municipal powers and, if valid, whether under a proper construction of R.S. 45:24-9 complainants were nevertheless entirely exempt from its terms.
Obviously, neither the N.J. Good Humor case nor the Higgins case are helpful authority in resolving the issue before us.
City of Newark v. Germano was decided on June 3, 1952, after the effective dates of L. 1950, c. 156 and L. 1952, c. 344, amending N.J.S.A. 45:24-9. The County Court did not refer to these amendments in upholding the right of the municipality to control the setting up on city streets of show cases, stands and the like, which would unduly restrict the use of streets and sidewalks by the general public, in order to display merchandise for sale. By way of dictum the court said that under N.J.S.A. 45:24-9 a municipality might not curtail the right of a duly licensed veteran (Germano was one) to hawk, peddle and vend merchandise on the city streets. The case is not determinative of our problem.
In Germano v. Keenan, Newark, following the passage of the 1952 amendment to N.J.S.A. 45:24-9, had adopted an *22 ordinance prohibiting all peddling on certain streets in the downtown and main business area. Plaintiffs, veterans holding a license under the statute, sought an injunction to restrain defendants from interfering with their hawking, peddling and vending on the streets and sidewalks of Newark. In granting the injunction the Chancery Division declared that "regulation" could not be stretched to mean "prohibition," and found there was no legislative indication that the 1952 amendment in any way changed the long-standing policy of the State expressed in the Strauss case. The court held that the ordinance sought to deprive plaintiffs of their right to peddle and hawk under their license as veterans, a status granted by the State, and for that reason alone was invalid. The case thus dealt with partial prohibition of peddling, and is not pertinent to the legal problem presented on this appeal.
Viewing N.J.S.A. 45:24-9 et seq., as a whole and giving full effect to all its parts, it is clear that the statute expressly and comprehensively sets out the licensing procedure to be followed in the case of honorably discharged veterans who desire to hawk, peddle and vend. They acquire their license at the hands of the county clerk, and from no other official or authority. It cannot be said that a municipality may, under color of the power to regulate given by the 1950 and 1952 amendments, require veterans to take out a second (municipal) license. To so interpret the existing law would give municipalities the power to defeat a statutory policy of long standing  that duly licensed veterans may hawk, peddle and vend anywhere within the boundaries of the State of New Jersey. It is to be presumed that the Legislature, from 1904 on, intended to and did preempt and exhaust this whole field of licensing.
In view of our conclusions that municipalities do not have the power to require licensed veterans to obtain a municipal license before they can hawk, peddle and vend on the public boardwalks, beaches, streets and highways, it is unnecessary to consider the other arguments raised by plaintiffs, namely, that the limitation of licenses to 100 is invalid, and the authority *23 vested in the assistant director of public safety to issue or deny licenses is void.
Defendants, relying upon R.S. 40:179-103, claim that Atlantic City is authorized to regulate the use of its beach because it has been laid out as a public park for public resort and recreation, and that no use inconsistent with the purposes of that act may be permitted. That contention might be a valid one in a different factual setting, but we are here dealing with veterans' rights under N.J.S.A. 45:24-9. The municipality could just as well, and with no greater success, have urged upon us its power to license and regulate under N.J.S.A. 40:52-1(c).
In their brief and at the oral argument, plaintiffs stated that they found no fault with certain sections of the ordinance: section 2 prohibiting the use of a gong, bell or other sound device to attract the attention of the public, and the crying of wares in a loud or offensive manner; section 10 requiring licensees to display prominently the price to be charged for the product or commodity; section 12 requiring licensees to maintain their equipment in a clean and sanitary manner and in accordance with the rules and regulations of the board of health; and section 13 requiring them to maintain the storage place or distribution point for their ice cream, food, beverages and related commodities in a clean and sanitary manner, and in accordance with the health board's rules and regulations. These sections are clearly a proper exercise of the municipal power granted by the statute; they fall directly within the permitted field of regulation.
Except for these and a few other sections dealing with definitions, severability in case any provision be held illegal or unconstitutional, repealer of inconsistent ordinances, penalties, and the effective date, the remainder of the sections, which have been described above, are invalid in light of the statute. Since all the sections are intimately related and form an integrated whole, the entire ordinance must be held invalid.
The order under appeal is reversed.