HAROLD MOGOLEFSKY AND MARTIN A. BERMAN, PLAIN-
TIFFS-RESPONDENTS, v. IRA SCHOEM, MAYOR OF THE
CITY OF CLIFTON, *ET AL.*, DEFENDANTS-APPELLANTS.

MARTIN A. BERMAN, PLAINTIFF-RESPONDENT, v. IRA
SCHOEM, MAYOR, ETC., *ET AL.*, DEFENDANTS-APPEL-
LANTS.

Argued November 9, 1966—Decided December 22, 1967.

590

*Mr. Sam Monchak* for defendants-appellants.

*Mr. Clive S. Cummis* for plaintiffs-respondents (*Messrs. Schiff, Cummis & Kent,* attorneys; *Mr. Cummis,* of counsel; *Mr. Michael B. Tischman* and *Mr. Steven S. Radin,* on the brief).

*Mr. Richard Newman,* Deputy Attorney General, for the State of New Jersey and New Jersey Real Estate Commission, *amici curiae* (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by
HALL, J. The plaintiffs are real estate salesmen duly licensed by the New Jersey Real Estate Commission. They are employed by J. I. Kislak, Inc., a real estate broker similarly licensed, which engages in brokerage of residential and other property in various parts of the state. One of

its methods of securing residential property to sell is to have its salesman go from house to house in a community, without prior invitation or appointment, soliciting sales listings. While so doing in the city of Clifton, plaintiffs were arrested for violating the city's ordinance regulating canvassers and solicitors, which provides:

"No person shall solicit or call from house to house in the city to sell or attempt to sell goods by sample or to take or attempt to take orders for the future delivery of goods, merchandise, wares or any personal property of any nature whatsoever, or *take or attempt to take orders for services to be furnished or performed in the future*, without first having received a written permit therefor." (Emphasis supplied).

Admittedly the plaintiffs had not obtained or even applied for such permits.

During the pendency of the charges in the Municipal Court, plaintiffs instituted the first-captioned action in the Chancery Division against the Mayor, Chief of Police and governing body of the city, seeking to have the ordinance declared null and void as to them and to restrain its enforcement. The theory was that the state had preempted all regulation of real estate brokers and salesmen by the enactment of the statute providing for the licensing of such persons at the state level. *N. J. S. A.* 45:15–1, *et seq.* They do not contend that the city's ordinance is invalid *per se* (see *Moyant v. Borough of Paramus*, 30 *N. J.* 528 (1959); *N. J. S. A.* 40:48–2), or that it did not, or was not intended, on its face, to apply to their solicitation activities.

The defendants, taking the view that the real estate license law did not in any way supersede the municipal power to regulate generally soliciting and canvassing, moved for summary judgment. The trial court agreed and granted the motion, resulting in a dismissal of the complaint.

Thereafter, the plaintiff Berman applied for a permit, offering to comply with all the requirements of the ordinance therefor. His application was rejected because of the vio-

lation complaint against him in the Municipal Court, which had been held in abeyance pending the outcome of the Chancery Division suit. Thereupon he commenced the second-captioned action in the same court, asking that the city be enjoined from the enforcement of the ordinance against him because the municipality arbitrarily refused to issue him a permit even if he fully complied with the ordinance. Before this suit came on for disposition, the Municipal Court found plaintiffs guilty of violating the ordinance (from which they took appeals to the Passaic County Court, which we understand remain undecided pending the final outcome of the litigation at bar). The defendants then moved for summary judgment, which the trial court granted, holding that the city was justified in denying Berman a permit because he had previously violated the ordinance.

On plaintiffs' consolidated appeals of the judgments in the two civil actions, the Appellate Division admitted the State and the New Jersey Real Estate Commission as *amici curiae* to present their views through the Attorney General, which, as elaborated upon at oral argument before us and by further advices thereafter, will be referred to later herein. That court felt that, while the state real estate license statute did not completely preempt municipal regulation, under basic police power principles, of persons so licensed as far as their door-to-door solicitation of business was concerned, it did preclude any municipal determination with respect to moral character or business responsibility as a condition of a licensed real estate salesman obtaining a solicitor's permit, since determination as to such matters was reposed in the Real Estate Commission in connection with its issuance of licenses.

The court held, 90 *N. J. Super.* 49 (1966), that only the provision of the ordinance restricting house-to-house solicitation to weekdays between the hours of 9 A. M. to 5 P. M. was validly applicable to real estate salesmen and went on to say:

"We are not deciding that a valid ordinance may not be adopted which would require all house to house solicitors for business, including real estate salesmen, to apply for and carry with them, while soliciting, an identification card or permit issued by the local police. However, in the case of licensed real estate brokers or salesmen, no fee may be required therefor and the identification card or permit must be issued without the requisite of fingerprinting or other qualifying test beyond establishing that they are licensed brokers or salesmen. Such a police identification card would achieve the objectives of this ordinance without interfering with the statutory rights of the licensees. However, no particular ordinance with such provisions is before us and we do not now definitely pass on such a situation until an actual case is presented." (90 *N. J. Super.*, at *pp.* 59–60).

As to the second suit, the court found it unnecessary to decide whether the plaintiff Berman was properly denied a permit for the calendar year in which he violated the ordinance, that year having also long since passed. The result of the appeals therefore was a reversal of the judgments dismissing the complaints and a direction to remand for the entry of an order enjoining defendants from enforcing the provisions of the ordinance as to plaintiff, except as to the provision limiting the hours of solicitation.

We granted the defendants' petition for certification, in which they reiterated their contention that municipal power in the field of canvassing and soliciting is not at all affected by the real estate licensing statute. 47 *N. J.* 241 (1966). Although the plaintiffs did not cross-petition, their brief indicates they still adhere to the position that no municipal regulation of their soliciting activities may be had, even with respect to limitation of hours.

The Clifton ordinance, typical of those in force in many municipalities since our decision in *Moyant v. Borough of Paramus, supra* (30 *N. J.* 528), requires a person desiring to solicit to file an application for a permit with the Chief of Police on a form stating his name and home address, the name and address of his employer or the firm he represents (accompanied by a letter of verification thereof), the applicant's places of residence during the preceding three years, the nature of the merchandise or services to be offered

and date on which he desires to commence soliciting and "[w]hether or not the applicant has ever been convicted of a crime, misdemeanor, or violation of any ordinance concerning canvassing or soliciting, and if so, when, where, and the nature of the offense".[1]

The investigative procedure to follow is set forth in this language:

"The chief of police shall cause such investigation to be made of the applicant's business and moral character as he deems necessary for the protection of the public good. This investigation shall include the photographing and fingerprinting of the applicant. If, as a result of such investigation, the applicant's character or business responsibility is found to be unsatisfactory, the chief of police shall endorse his disapproval and the reasons therefor on the application and the permit shall not issue. If, as a result of such investigation, the applicant's character and business responsibility is found to be satisfactory, the chief of police shall endorse his approval and execute a permit to be formally issued by the city clerk. . . ."

A fee of $3.00 is required to be paid upon the filing of the application "to defray the cost of investigating, photographing, fingerprinting, processing and issuing the permit". (There is no suggestion that the fee is unreasonable or that it is imposed solely for revenue, see *N. J. S. A.* 40:52–2). The permit, to be carried by the solicitor, sets forth the name, address, photograph and thumbprint of the permittee, the kinds of goods or services to be sold or performed, and the date of issuance and expiration. The latter date is December 31 of the year in which issued and renewal is required for each calendar year, upon the same form of application and investigation. The applicant's fingerprints are utilized to obtain any criminal record from central police

---

[1] The application form used by Clifton in the cases of plaintiffs goes considerably beyond the ordinance provisions. It also calls for personal physical information, marital status, date and place of birth, names and addresses of three former employers and dates of such employment, and, instead of data concerning convictions, inquiries whether the applicant has ever been arrested and, if so, the date and place, the offense charged, the disposition and the name of the court.

sources and we are advised that, once such an inquiry has been made, any supplementary data later received will automatically be forwarded to the inquiring local police department.

It is conceded that this kind of regulation, applying to all who seek to solicit the sale of goods and the furnishing of services from householders, without invitation or advance appointment (see *City of Clifton v. Weber*, 44 *N. J.* 266 (1965)), is a valid exercise of the municipal police power. *Moyant v. Borough of Paramus, supra* (30 *N. J.* 528). Such an ordinance has several legitimate objects: to seek to prevent fraud or dishonest dealing by the unscrupulous, especially since the solicitor is very frequently a stranger and quickly gone from the locality;[2] to prevent solicitation being used by the criminally minded as a means of obtaining admittance to private homes for some present or future unlawful purpose; and, by the permit the solicitor carries, to afford a ready means of identification to policemen in the solicitation area and of assurance to the householder that the permittee has been screened and approved and so is presumably safe to allow in the dwelling. In essence, the extent of the municipality's interest on behalf of its residents is that it, or some other governmental agency, has been satisfied of the moral character and business responsibility of those who ring doorbells for purposes of solicitation without advance invitation or appointment.

The New Jersey real estate license statute, *N. J. S. A.* 45:15–1, *et seq.*, first enacted by *L.* 1921, *c.* 141 and steadily strengthened by amendments since, represents a very salutary effort to upgrade on a state-wide basis the qualifications and quality of those who, as brokers or salesmen, act as agents in dealing with other people's property and frequently their funds. The method is by licensure

---

[2] While it has no bearing on the applicability of this ordinance or the disposition of the litigation, it may be noted that the plaintiffs are non-residents of Clifton and that their employing broker is based elsewhere with no branch office in the city.

of brokers and salesmen. The latter must be employed by and work under the supervision of a licensed broker. They cannot do business on their own account and may not seek to be licensed as a broker until they have served a two-year apprenticeship as a salesman. There are both general and special educational requirements which must be met in advance, *N. J. S. A.* 45:15–9 and 10.1, and licensure is granted only upon successful passage of an examination administered by the Real Estate Commission testing general knowledge as well as that of the essentials and responsibilities of the business, *N. J. S. A.* 45:15–10. All applicants must furnish satisfactory evidence of good moral character, *N. J. S. A.* 45:15–9, and are subject to license revocation, suspension or fine for many kinds of misconduct, *N. J. S. A.* 45:15–17, as well as to statutory penalties for violations of the act which the commission may sue for, *N. J. S. A.* 45:15–23. The statute, *N. J. S. A.* 45:15–12.1, makes it mandatory for the commission to refuse a license "to any person known by it to have been, within five years theretofore, convicted of forgery, embezzlement, obtaining money under false pretenses, extortion, criminal conspiracy to defraud, or other like offense or offenses", requires a revocation of a license already issued upon conviction in or outside of this state for any such offense during the license term, *N. J. S. A.* 45:15–19.1, and authorizes the suspension of a license upon indictment therefor pending the trial of the charge, *N. J. S. A.* 45:15–19.2. Each license must be renewed annually and we are advised the licensee is directed to disclose in his renewal application any pertinent events which have occurred during the license year.

The commission does not require an applicant's fingerprints to be submitted with a license application form. It relies, as to any convictions or indictments for crime, on the applicant's sworn answers to inquiries in the form, without further check. The form also requires particulars as to any prior refusal, revocation, or suspension of a real estate license in this state or elsewhere and similar informa-

tion with respect to any license or right to engage in any other business or profession. It also requires, at least in the case of a salesman applicant, a certification by the prospective employing broker, who of course has already been licensed, of the good moral character of the applicant. In this regard, Rule 21 of the commission's Rules and Regulations says:

"Recognizing the statutory requirement that any licensee shall be of good moral character, the sponsoring broker, before applying for the licensing of any salesman applicant, shall assure himself that such applicant bears a good reputation for honesty and fair dealing. To this end, a competent investigative report is recommended." [3]

It should also be mentioned that the commission does not issue any identification cards to licensees, so that a soliciting salesman or broker would have nothing authoritative to show householders or police evidencing that he held a state real estate license, if no municipal permit is to be allowed.[4] (A broker's license itself is required to be prominently displayed in his place of business, with duplicates similarly kept in view in each branch office. A salesman's license is never in his possession, but is held and displayed by his employing broker. *N. J. S. A.* 45:15–12).

■■ We thoroughly agree with the Appellate Division that the state real estate license law does not preempt all

---

[3] The commission advises us that it recognizes the desirability of requiring fingerprints of license applicants and a subsequent check of central police records and in fact is now seeking legislation specifically authorizing it to do so. It indicates that the cost would be substantial. There are presently about 9,000 brokers and 20,000 salesmen holding annual licenses.

[4] The real estate license law originally required the commission to issue to each licensed broker and salesman a pocket identification card certificated under its seal. *L.* 1921, *c.* 141, § 9, 10 and 16. This requirement was removed from the law by *L.* 1961, *c.* 88. An indirect reference to a salesman's pocket card remains in *N. J. S. A.* 45:15–14, which the commission views as an inadvertent retention. The reason given for doing away with the requirement is the difficulty which had been found in recovering cards from brokers or salesmen whose licenses were not renewed or had been revoked or suspended.

exercise of municipal police power over licensees. While a municipality may not require a person to obtain a local license to carry on a business or profession when he has already been licensed under state law, *Coculo v. City of Trenton*, 85 *N. J. Super*. 523 (*App. Div.* 1964), it may exercise appropriate police power over amenable aspects of the conduct of that business for the protection of purely local interests by general or specific local legislation. *Chaiet v. City of East Orange*, 136 *N. J. L.* 375 (*Sup. Ct.* 1948). This is permissible where the local regulation relates to an aspect not already subject to state statute or regulation or is not in conflict therewith or where the state has not acted pursuant to powers granted it.

In this connection the Appellate Division said:

"The issue in this case is not the right of the municipality to exercise its police powers even as to those licensed by the State to carry on a business. For example, no one would question the city's right to regulate the parking of automobiles on the public streets, including those of licensed real estate salesmen, or to prohibit the construction and use by such licensees of a real estate office building in violation of the local zoning ordinance or building code. Rather, the issue in this particular case is whether the local ordinance diminishes or takes away the privileges granted to the licensee by the State." (90 *N. J. Super.*, at *pp.* 57–58).

We do not think the last paragraph of *N. J. S. A.* 40:52–1 dictates a conclusion contrary to the view we have expressed above. The pertinent portion thereof reads: "Nothing in this chapter [Chapter 52, Licenses] contained shall be construed to authorize or empower the governing body of any municipality to license or regulate any person holding a license or certificate issued by any department, board, commission, or other agency of the State; * * *" The provision does not have precise pertinency since Clifton's soliciting ordinance was not enacted pursuant to the authority of *N. J. S. A.* 40:52–1, but rather to that of *N. J. S. A.* 40:48–2. However, the same limitation is implicit

in the language of the latter section stating that the general municipal police power may extend to local legislation "not contrary to the laws of this state". We believe these statutory expressions are intended to mean nothing more than the view we have stated in the preceding paragraph and also that no statutory provisions preclude the imposition of a permit fee, where local regulation is permissible, so long as the fee is reasonably related to the cost of regulation and is not imposed solely for revenue.

The Appellate Division concluded that the Clifton ordinance does infringe on the real estate license law in permitting the local chief of police to override the Real Estate Commission's implicit finding, in issuing a license, that the licensee is of satisfactory moral character and business responsibility. The local official, under the terms of the ordinance, can negative that finding by determining, after his inquiry, that the applicant for a solicitor's permit is "unsatisfactory". We agree that the statute evidences a preemption by the state as to evaluation and conclusion with respect to that element.

It is appropriate at this point to mention the views the Real Estate Commission has expressed to us. The commission points out that so-called "saturation" door-to-door solicitation for real estate listings does not represent traditional practice in the real estate industry, although it knows that a few licensees have engaged and still do engage in this method. It goes on to say that uninvited solicitation of potential listings on an isolated, casual or occasional basis does, however, represent traditional practice. Here we may state that, as far as the legitimate objects of a municipal soliciting ordinance are concerned, it makes no difference whether a real estate solicitor rings every doorbell in a block or whether he is selective. The test of soliciting is rather whether or not he is invited or has an appointment to call on the householder. See *City of Clifton v. Weber, supra* (44 *N. J.* 266). Also, we ought to add that it likewise makes no difference whether the doorbell ringer

is a real estate salesman, an individual holding a broker's license, or the representative of a licensed corporate broker.

The commission comments that a few instances have been brought to its attention where municipalities have been disturbed by door-to-door "saturation type" solicitation, but it has no evidence of any generalized abuses in this regard throughout the state and has therefore not deemed it appropriate to attempt to regulate the practice on the state level. We have no doubt of its power by rule and regulation to prohibit all uninvited solicitation of residents.[5]

The commission consequently concludes that, in the absence of action on its part, it sees no reason why a local governing body should not be free "to cope with the situation". Specifically, it tells us that a municipal ordinance regulating soliciting for real estate listings would not offend or run contrary to any policy of the commission "whether that regulation were: (a) as to hours, (b) mere registration requirements without fees, (c) fingerprinting or photographing requirements, or (d) requirements that an identification card, with fingerprints and/or photographs be carried". While this expression refers to local regulation of "saturation type" soliciting only, we have already indicated that any uninvited visitation is amenable to local regulation of solicitation and have also expressed the view that the charging of a reasonable local fee, not solely for revenue, is not improper.

The commission strongly felt, however, that its finding of good moral character in issuing a real estate license

---

[5] It has acted, by way of regulation of soliciting listings, in the field of "blockbusting", where its rule 26 reads:

"No broker or salesman shall affirmatively solicit the sale, lease, or the listing for sale or lease, of residential property on the grounds of alleged change of value due to the presence or prospective entry into the neighborhood of a person or persons of another race, religion or ethnic origin nor shall distribute, or cause to be distributed, material or make statements designed to induce a residential property owner to sell or lease his property due to such change in the neighborhood."

should not be subject to negation by a contrary determination of a local official. We have previously indicated our agreement that evaluation and conclusion of that element has been preempted by the state. We think, however, that this conclusion does not preclude the local official from inquiring and checking as to the criminal record of a licensed real estate salesman or broker applying for a solicitor's permit, at least so long as the commission does not require fingerprints and makes no check with respect to such a record, but the municipality may not refuse a solicitor's permit on the basis of information so acquired.

In order to make a practical accommodation of the interests involved, we arrive at the following conclusion (in which it will be noted we disagree in some respects with the previously quoted view of the Appellate Division, 90 *N. J. Super.*, at *pp.* 59–60):

■ A licensed real estate salesman or broker making uninvited personal solicitations for listings from residents is subject to Clifton's solicitor's ordinance applying to all engaging in that method of doing business (including the hours limitation contained therein). He must apply for and obtain a permit and pay the $3.00 fee. The municipality may use its usual form of permit and a form of application therefor which does not go beyond the inquiries specified in the ordinance and may require the taking of fingerprints and a photograph. When such a person makes application, he should present proof that he is a licensed real estate salesman or broker. The municipality may investigate, promptly, to the extent of checking on the applicant's criminal record and may withhold issuance of the permit meanwhile. If that check is negative, the permit shall then issue forthwith. If the check discloses a criminal record, the municipal authorities shall be limited to reporting the same to the commission, along with any other related information known to them. The commission's obligation will then be to review such a report and decide whether it calls for any reconsideration of its prior finding of good

moral character. If the report does not so dictate, the commission shall promptly so advise the municipality and the permit shall then issue at once. If the report does indicate the need for commission action, presumably by a proceeding to revoke, suspend or refuse to renew the license, the municipality shall be so advised and the permit may be withheld pending the outcome thereof.

We see no reason why the Clifton ordinance should not be so construed and applied and we do not agree with the Appellate Division's indication that a separate special ordinance covering solicitation by real estate salesmen and brokers is necessary.

As far as the other aspects of the present litigation are concerned, we see no justification to deny permits for subsequent years to these plaintiffs because of any prior violation of the ordinance, since we have considerably limited its requirements as to them. The second suit is now clearly moot. And it should go without saying that no convictions of them for violation of the ordinance (now pending on appeal in the Passaic County Court) can stand.

The judgment of the Appellate Division is accordingly modified and the cases are remanded to the Chancery Division for entry of judgments declaratory of the views herein expressed. No costs.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.