111 N.J. Super. 408 (1970)
268 A.2d 359
BOULEVARD APARTMENTS, INC. AND SKYLINE APARTMENTS, INC., BOTH CORPORATIONS OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
BOROUGH OF HASBROUCK HEIGHTS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 29, 1970.
*411 Mr. Benedict Krieger, Attorney for Plaintiffs.
Messrs. Chandless, Weller & Kramer, Attorneys for Defendant.
TOSCANO, J.C.C.
On March 11, 1969, the Hasbrouck Heights Borough Council adopted Ordinance No. 962 which purports to regulate and license, among others, multiple family dwellings, including garden apartments, in the community. Plaintiffs in this action are each the owners of such apartments in the borough and, obviously, are directly affected by the ordinance.
Plaintiffs and defendant borough have been repeated adversaries in litigation over excessive property assessments, Borough of Hasbrouck Heights v. Div. of Tax Appeals, 41 N.J. 492 (1964), and a previous ordinance which also unsuccessfully attempted to regulate and license apartment houses. Boulevard Apartments, Inc. v. Hasbrouck Heights, 86 N.J. Super. 189 (Law. Div. 1965), affirmed 90 N.J. Super. 242 (App. Div. 1966). The latter decision held that a $50. license fee, fixed under N.J.S.A. 40:48-2, for apartment complexes was excessive, not being limited to the actual cost of regulation.
The birth of the present ordinance was induced by N.J.S.A. 40:52-1, amended in 1968, which gave a municipality *412 the power, by ordinance, to license and regulate "motels, furnished and unfurnished rented housing or living units * * * and the occupancy thereof." It is admitted and appears beyond doubt that the plaintiffs' apartment houses come within the purview of this amendment.
Plaintiffs made a two-pronged attack on this ordinance claiming that the State has pre-empted the field of multiple dwelling licensing and regulation by virtue of N.J.S.A. 55:13A-1 et seq., the Hotel & Multiple Dwelling Health & Safety Law of 1967, and, alternatively, that the $10 annual fee imposed upon each dwelling unit by the ordinance is excessive. I will dispose of these contentions in reverse order.

I
Section 7 of the ordinance reads:
There shall be charged and collected for the granting of the license * * *, which license fee is imposed for, and shall be a part of, the general revenues of the Borough, a license fee per annum as follows:

* * * * * * * *
Dwelling units $10.00 per unit for each unit, more than two, in any licensed premises * * *
There is a presumption of the reasonableness of a license fee imposed by an ordinance and the burden of proving otherwise rests upon the attacker. Garden State Racing Assn. v. Cherry Hill Tp., 42 N.J. 454 (1964); Monmouth Jct. Mob. Home Pk. v. So. Bruns. Tp., 107 N.J. Super. 18 (App. Div. 1969), cert. den. 55 N.J. 30 (1969). The amount of such fee rests in the sound discretion of the governing body and a court will not interfere unless the fee is prohibitory and unreasonable. Monmouth Jct. Mob. Home Pk. v. So. Bruns. Tp., supra. A license fee imposed by ordinance adopted pursuant to N.J.S.A. 40:52-1 may be geared not only to the cost of regulation of the ordinance, but also as incidental to this regulatory cost, to the raising of revenue. The revenue, however, collected by the fees must not unreasonably *413 exceed the cost of regulation. Garden State Racing Ass'n v. Cherry Hill Tp., supra; Belleville Ch. of Commerce v. Belleville, 93 N.J. Super. 392 (App. Div. 1967), affirmed 51 N.J. 153 (1968). In Bellington v. East Windsor Tp., 17 N.J. 558, 566 (1955), the court stated:
A tax, complementing the license fee proper, is legally sufficient if it be reasonably related to the value of the public services and facilities afforded the users of the regulated areas and the benefits of the regulations themselves and the consequent government supervision and control, and thus a correlated exercise of both the police and the taxing powers conformably to the statutory grant.
And in Monmouth Jct. Mob. Home Pk., supra, the Appellate Division, in affirming a trial court determination that revenue realized from license fees imposed on mobile home parks was reasonably related to municipal expense associated with the parks and thus not confiscatory, stated at p. 27 of 107 N.J. Super. "The inquiry is whether the exaction of the license fee bears a reasonable relation to the value of the privilege conferred."
The municipality in Garden State Racing Ass'n, supra, licensed by ordinance all local parking lots. Plaintiff there operated a mammoth lot, adjacent to its racetrack capable of accommodating over 400,000 cars during the course of the season. The license fees from plaintiff's lot alone amounted to about $20,000 annually. Our Supreme Court held that in addition to recovering the cost of regulation the municipality could also, through the license fees, obtain money to help defray the cost of services which the municipality was bound to supply anyway. Such as road maintenance, repair and traffic control.
Although the present ordinance provides that the fees are imposed for revenue, that in itself will not render the fees excessive as solely revenue raising. Weiner v. Borough of Stratford, 15 N.J. (1954); Bellington v. East Windsor Tp., supra. The ordinance also provides for periodic inspection of licensed premises by municipal agencies *414 to determine whether violations of any borough ordinance exist on the premises. The cost of such inspections may properly be included in the license fee imposed by the licensing ordinance. Belleville Ch. of Commerce v. Belleville, supra. Plaintiffs also point out that no new men have been hired to enforce the ordinance, thus diminishing if not negating any administrative costs. This, however, is not the determining factor. Belleville Ch. of Commerce, supra. Testimony reveals that after the ordinance was passed, no fees were collected, no inspections were made and no actual additional costs accrued to the borough whatsoever, but this was because no effort had been made to enforce the ordinance in view of this suit.
If the ordinance were declared valid and the municipality subsequently acted under it, the cost of issuing the licenses, other miscellaneous expenses in administrating and enforcing the ordinance and the costs of inspections would probably bear a reasonable relation to the license fees imposed. Any excess over the costs of regulation and enforcement would have to be reasonably related to the value of various public services and facilities afforded plaintiffs.
Plaintiffs' position is supported by little more than blanket statements that no new personnel have been hired as a result of the ordinance and that there has been no change in customary municipal services since its adoption. They introduced no evidence of the actual cost of administering the ordinance or to prove the unreasonableness of the fees as compared with the cost of the regulatory aspect. Under the circumstances, any determination of unreasonableness of the fees would be premature. See Weiner v. Borough of Stratford, supra.

II
Plaintiffs' second argument, however, has substantial merit. As stated above, the ordinance in question was adopted pursuant to N.J.S.A. 40:52-1(d). The statute also states *415 * * * "Nothing in this chapter contained shall be construed to authorize or empower the governing body of any municipality to license or regulate any person holding a license or certificate issued by * * * the State * * *."
Clearly the purpose of this provision was to prevent double licensing and to acknowledge the state's right of pre-emption in certain fields. Plaintiffs assert that the State has pre-empted local regulation and control of multiple dwellings by the enactment of N.J.S.A. 55:13A-1 et seq., The Hotel & Multiple Dwelling Health & Safety Law.
Local ordinances ancillary to state enactments benefiting the public health, safety and security, "without the pale encompassed by state control," are deemed to be a reasonable exercise of local police power for the protection of local inhabitants or to meet peculiar local police health and safety situations, State v. Stockl, 85 N.J. Super. 591, 597 (Cty. Ct. 1964), where the court held at p. 599:
* * * where the Legislature has, by appropriate legislation, assumed control of a state-wide occasion, industry or profession and all its functions under the police power in the public interest for the safety, security and protection of its customers, patrons or clients, and delegated authority to a state board or agency to control, regulate and license the persons so engaged by such pre-emption, a municipality is precluded from exercise of local, regulation or licensing, except control, regulation or licensing, except to the extent reserved by the Legislature to the municipality in the act or by statutory enactments in pari materia.
In Mogolefsky v. Schoem, 50 N.J. 588 (1967), the complainants, state licensed real estate brokers, were convicted of violating the local ordinance prohibiting door-to-door soliciting without a permit. Modifying an Appellate Division decision reversing a lower court's dismissal of the complaint, our Supreme Court stated:
While a municipality may not require a person to obtain a local license to carry on a business or profession when he has already been licensed under state law * * *, it may exercise appropriate police power over amenable aspects of the conduct of that business for the *416 protection of purely local interests by general or specific legislation * * * This is permissible where the local regulation relates to an aspect not already subject to a state statute or regulation or is not in conflict therewith or where the state has not acted pursuant to powers granted it.
In this connection the Appellate Division said: "* * * the issue in this particular case is whether the local ordinance diminishes or takes away the privileges granted to the licensee by the State." [50 N.J. at 598] Midland Carpet Corp. v. Franklin Associated Properties, 90 N.J. Super. 42 (App. Div. 1966).
Of course, where the purpose and effect of the State and local licensing requirements are dissimilar, there is no parallel licensing within the ambit of N.J.S.A. 40:52-1. Chaiet v. East Orange, 136 N.J.L. 375 (Sup. Ct. 1947).
An examination of the State law and the exhaustive rules promulgated pursuant thereto leads this court to the conclusion that at least for the purpose as set forth in N.J.S.A. 55:13A-2 of providing decent, standard and safe apartment housing necessary for the protection of the health and welfare of the state's citizenry, the State has pre-empted the field of regulation of multiple dwellings with one exception. That exception is found in N.J.S.A. 55:13A-25(b) and provides:
This act is not intended, and nothing in this act shall be construed, to preclude the right of any municipality to adopt and enforce ordinances or regulations more restrictive that this act or any rules or regulations promulgated thereunder.
The purpose of the ordinance as therein set forth is identical to the purpose of the State enactment as set forth in N.J.S.A. 55:13A-2, that is to protect the health, safety, welfare and morals of the borough's residents by providing minimum housing standards to prevent congestion, overcrowding and slum areas. These minimum housing standards set down in the ordinance, e.g., minimum floor requirements, custodial services, lighting of the premises, bathroom ventilation, heating requirements and prohibition of certain gas appliances, are more comprehensively *417 treated in the State regulations, entitled "Regulations for the Construction and Maintenance of Hotels & Multiple Dwellings". In fact, with the exception of the ordinance provision requiring natural ventilation in bathrooms, the State regulations appear more restrictive than their local counterparts. Thus, the bulk of the borough's regulations as to housing standards must be stricken as less restrictive and therefore, conflicting with the State regulations. The court is then left with the provision dealing with bathroom ventilation and the remaining general provisions as to licensing and enforcement of the ordinance and the severability clause. In Gross v. Allan, 37 N.J. Super. 262, 269 (App. Div. 1961) the court stated "The question of severability of the invalid provision is one both of legislative intent, * * * and of whether the remaining provisions are functionally self-sufficient as containing the essentials of a complete enactment * * * The two criteria must coexist." If all the sections of an ordinance are intimately related and form an integrated whole, those provisions that are declared invalid in turn invalidate the entire ordinance. Tagmire v. Atlantic City, 35 N.J. Super. 11, 23 (App. Div. 1955).
As stated above the purpose of the ordinance is to provide safe and decent housing and to prevent slum areas and overcrowding. The purpose is not effectuated merely by providing for natural ventilation in apartment bathrooms. The ordinance does not make sense and does not contain the essentials of a complete enactment without the provisions which have been stricken as invalid. Moreover without these provisions, there would be no standards by which a license could be granted or denied. Therefore, the ordinance must fail.
In conclusion, this court holds that although N.J.S.A. 40:52-1 permits a municipality to license and regulate apartment buildings, when the purpose of the local regulation is the same as the purpose of the State regulation pursuant to N.J.S.A. 55:13A-1 et seq., the municipality *418 is precluded from regulation except to the extent reserved in N.J.S.A. 55:13A-25(b). When the municipality has not, by ordinance, met the conditions imposed by the latter statute concerning permissible regulation, the ordinance must fail.
It is the judgment of this court that Ordinance 962 is invalid and an order to that effect will be entered.