Froessel, J.
These direct appeals by I. L. F. Y. Co., O’Brien, York Associates, Inc., Webb & Knapp, Inc., and Great South Bay Company, owners of rent-controlled residential properties located in the City of New York, present for our determination the alleged unconstitutionality of certain provisions of the recently enacted City Rent and Rehabilitation Law (Local Laws, 1962, No. 20 of City of New York). As was the case on the first I. L. F. Y. Co. appeal (I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263), the challenged portions of the law relate to the procedure whereby landlords are able to obtain maximum rent adjustments under the fair net return provision.[1]
*485 The city law provides for individual adjustment of maximum rents where the “ rental income from a property yields a net annual return of less than six per centum of the valuation of the property” (Administrative Code of City of New York, § Y41-5.0, subd. g, par. [1], subpar. [a]); net annual return is the amount by which the earned income exceeds operating expenses, the latter including a depreciation allowance of 2% of the value of the buildings (§ Y41-5.0, subd. g, par. [1], subpar. [a], cl. [4], subcl. [i]). The valuation of the property “ shall be the current assessed valuation established by the city, which is in effect at the time of the filing of the application for an adjustment ” (§ Y41-5.0, subd. g, par. [1], subpar. [a], cl. [1]); provided, however, that the city rent agency “may” make a different determination of value (a) where the assessment was reduced for the year next preceding the date of the current assessed valuation, or (b) where there has been a bona fide sale of the property after March 15,1958, as a result of an arm’s length transaction, on normal financing terms, at a readily ascertainable price and unaffected by special circumstances (§ Y41-5.0, subd. g, par. [1], subpar. [a], cl. [1], subcls. [i], [ii]).
In addition, in an attempt to cope with the continuing problem of real estate speculation and the resulting oppressive inflationary rent spiral, the city law provides that an application for a n'onservice connected increase (i.e., a so-called “ 6 and 2 ” increase) may not be filed with respect to any property if, on the date when the application is sought to be filed, (a) less than two years have elapsed since the date of filing the last prior application which resulted in an increase, or (b) less than two years have elapsed since the last sale of the property and the application is based upon a sale price in excess of the assessed valuation (§ Y41-5.0, subd. g, par. [1], subpar. [a], cl. [2], subcls. [i], [ii]). In keeping with the two provisions just referred to, it was further provided that the total adjustments ordered by the city rent agency on the basis of a “ 6 and 2 ” application “ shall not exceed fifteen per centum for any twenty-four month period this limitation may be waived by the agency, however, £ ‘ where a greater increase is necessary to make the earned income of the property equal to its operating expense ” (§ Y415.0, subd. g, par. [2]). The final provision of the city law with *486 which we are concerned on these appeals is the one making it applicable to pending administrative proceedings (§ Y41-14.0, subds. a, b, par. [1]).
The factual situation in each appeal is briefly as follows: I. L. F. Y. Co. is, like Great South Bay Co., a case involving use of a recent bona fide sales price as the basis for a “ 6 and 2 ” increase. It purchased the property in question on February 20, 1961 and filed an application for an increase a week later. The sales price of $1,378,000 was almost twice the assessed valuation of $700,000. On September 13, 1961 the State Commission held that the sales transaction was a bona fide one[2] meeting the statutory requirements. On October 10, 1961 I. L. F. Y. Co. ’s application was transmitted by the State Commission’s accounting division to the Local Bent Administrator for 1 ‘ issuance of adjustment orders as indicated on attached form”, which form indicated that a rent adjustment of $33,653.25 —19.12% of the rental income — was warranted. Before the orders could be signed the Legislature provided for a temporary freeze until May 1,1962 (L. 1962, ch. 21), which latter statute we declared constitutional in the second I. L. F. Y. Co. appeal (I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 11 N Y 2d 259). Under the present city law, I. L. F. Y. must now wait until February 20, 1963 to file its application, and, inasmuch as the recommended increase amounted to 4.12% over the 15% allowed, it will be unable to file the necessary application for the excess until February, 1965.
Great South Bay, wherein the owner purchased the property in question on June 14, 1961 and filed an application for an increase about a week later on June 23, 1961, is in a similar situation. The sales price of $590,000 — over 76% above the assessed value of $335,000 — was determined to be a bona fide one on October 26, 1961, and on January 19, 1962 the docket was transmitted to the Local Bent Administrator for “ issuance of adjustment orders ”, said orders to be effective on June 14, 1962. The accounting1 division’s analysis indicated that an *487 adjustment of $16,531.43, or 26.90% of the rental income, was warranted in this particular case. Under the city law, appellant must now wait to file its application until June 14, 1963, and, because the maximum increase which may be granted within any two-year period is 15%, it must wait until June, 1965 before filing its second application which would enable it to receive the balance of 11.90%. Since it will not be receiving a 6% net annual return on its investment in the meantime (although it will be receiving much more on the basis of assessed value), it claims that the delaying provisions are, as to it, unconstitutional.
The O’Brien and Webb & Knapp appeals do not involve the question of sales price; in each of those cases the valuation offered in support of an increase was the assessed valuation. O’Brien owned the premises in question since 1945. Application for a “ 6 and 2 ” increase was filed July 6, 1961. The application was processed during the freeze period pending turnover of rent control to the city, and an increase of $10,706.19, or about 15%, was indicated. Under the city law, the increase may be ordered at any time since there is no waiting period in assessed valuation cases. Appellant O’Brien, however, looking to the future for further increases, contends that it is harmed by the two-year hiatus after an application which has resulted in an increase. Under the former law, a further increase, if justified, could have been applied for on July 6, 1962. Under the city law, no application may be filed until July 6, 1963, and no more than 15% may be awarded if warranted until sometime during 1964 (two years from the date of the order which may now be made on its first application). Webb & Knapp is managing agent for Marion Zeckendorf who has owned property since 1948. The situation here is substantially identical with the O’Brien appeal, except that the indicated increase is less than 15%.
Appellant York is in a somewhat different situation. It purchased its property in 1959, and filed an application for a “ 6 and 2 ” increase on the basis of its purchase price on September 29, 1960. The application was granted in June, 1961, and, pursuant to the then applicable law, was made retroactive to December 26, 1960; the increase amounted to 8.90% of the rental income. Three months later, September 29, 1961, York filed a *488 new application as the result of increased operating expenses. On the basis of the figures stated in the application, a rent adjustment of approximately $14,000, or 7%, is indicated, but no increase has as yet been granted. York must now refile its second application on September 29, 1962.
On the present appeals, appellants do not challenge the City Council’s finding that “ a serious public emergency continues to exist” which “ necessitate [s] the intervention of * * * local government in order to prevent speculative, unwarranted and abnormal increases in rents ”, and that there “ continues to exist an acute shortage of dwellings ” (Local Laws, 1962, No. 20 of City of New York, § 1, adding Administrative Code, § Y411.0, subd. a). Neither do they—nor could they—challenge the constitutionality of the State law as amended in 1961, and held constitutional by us in the first I. L. F. Y. Co. appeal (10 N Y 2d 263, supra). Indeed, in urging the unconstitutionality of the challenged provisions of the present city law, appellants request “that the State Law provisions [the very provisions they attacked as unconstitutional with equal vigor but one year ago] be substituted pursuant to subd. 1 of Sec. 16 of the Enabling Act [L. 1962, ch. 21, § 1, subd. 16, the saving clause] ”.
Appellants’ primary contention is that the City Council was unjustified in enacting more stringent police power restrictions, and that “ in the absence of some showing that there has been a dramatic worsening of the emergency warranting increased restrictions, these changes are without rational basis This contention is identical with the one advanced by appellants in their attempt to have the 1961 State amendments declared unconstitutional, and Chief Judge Desmond’s reply thereto in the first I. L. F. Y. Co. appeal (10 N Y 2d 263, 268, supra) is equally appropriate in this, the third, I. L. F. Y. Go. appeal: “ We know of no requirement for such a new declaration or description of conditions requiring tightening of controls.” (Emphasis supplied.) The real question, therefore, is whether there was anything before the City Council justifying their enactment of two-year provisions relating to pre-filing, repeated applications and the 15% maximum increase.
In addition to the “ exceedingly strong presumption of constitutionality ” and other related principles to which we made reference in our opinions on the two prior I. L. F. Y. Co. appeals *489 (10 N Y 2d 263, 269, supra; 11 N Y 2d 259, 265, supra), the City Council had before it the favorable report of its Committee on General Welfare, testimony adduced during four days of public hearings on the proposed law, numerous memoranda and the benefit of legislative documents submitted at the time of the 1961 State amendments (L. 1961, ch. 337) [3] *****, to say nothing of the 11‘ pooled general knowledge ’ of the legislators themselves (East New York Sav. Bank v. Hahn, 326 U. S. 230, 234 * * *) ” (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 418). In its report, the Committee on General Welfare noted that the practice of buying so-called “ hardships ”, if allowed to continue unabated, would result in ‘ ‘ inflationary spirals clearly contrary to the fundamental purpose of a rent control program ”, and that the “ two-year delay will check the tendency to consider a ‘ hardship ’ application as an element of value in property transfers ”. Clearly, the City Council had the right to entertain at least a ‘ ‘ well-founded fear of future trouble ’ ’, and this, as we stated in the first I. L. F. Y. Co. case, is a sufficient “ predicate for police power law-making ” (10 N Y 2d, at p. 270).
Appellants also contend that the challenged provisions are unconstitutional because they are harsher than is reasonably required to cure the specific evil to which they are addressed, an evil with which they claim the State amendments, coupled with the additional city provision for use of assessed valuation as the primary basis for applications, adequately cope. They also urge that applications for increases dropped 27% during the second half of 1961. This argument, of course, is predicated upon a basic factual dispute as to the efficacy of the 1961 State amendments and the gravity of the continuing fear of an inflationary rent spiral—a matter wholly inappropriate on this direct appeal which brings up constitutional questions only (Civ. Prac. Act, § 588, subd. 4; I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263,270, supra). In any event, once it has been ascertained that there is an actual and manifest evil to which the challenged legislation bears a reasonable relation, *490 the courts may not dictate to the legislative body the choice of remedy to be selected; questions as to wisdom, need or appropriateness are for the Legislature (United States v. Carolene Prods. Co., 304 U. S. 144, 154; Olsen v. Nebraska, 313 U. S. 236, 246; Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 541; Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 420, supra).
Moreover, the Legislature, by its enabling legislation, expressly conferred upon the city the right to adopt or amend such local laws, rules and regulations as it deemed appropriate to meet the emergency housing situation, notwithstanding the fact that such laws might not be consistent with the former State law (L.1962, ch. 21, § 1, subd. 5). This was in keeping with our decision in Teeval Co. v. Stern (301 N. Y. 346, 361) wherein we stated: ‘ ‘ The State rent control statute reveals the dissatisfaction of the Legislature with some of the results of the former Federal process of rent control (L. 1950, ch. 250, § 1). The Legislature, then, had reasons of its own for not following more closely than it did the pattern of the Federal system of rent control and, this being so, it is not for this court to say that the Legislature was bound to take a different course (see Lapchak v. Baker, 298 N. Y. 89, 95, and cases there cited).” So, too, we may not now say that it was incumbent upon the city to adhere to the former State law.
We find no merit in appellants’ in terrorem argument that if we uphold the present law there is no assurance that it will not subsequently be amended to extend the ownership requirements and hiatus between applications to ten years, or to “ obliterate property rights by pyramiding these types of applications into the Never-Never-Land ”. Such a situation is not before us, and in the instant cases there is not such a great disparity between a one- and a two-year period that we can say with any degree of assurance that one is constitutional while the other is not. Courts “ strike down statutes only as a last resort * * * and only when unconstitutionality is shown beyond a reasonable doubt ” (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 541, supra). Such a showing has not been made on these appeals.
Appellants’ assertion that the application of the city law to their pending applications is unconstitutional was conclusively answered in the first I. L. F. Y. Co. appeal (10 N Y 2d 263, 270, *491 supra): “ appellant did not have in any particular rule an interest so vested as to entitle it to keep the rule unchanged (Preston Co. v. Funkhouser, 261 N. Y. 140; Wasservogel v. Meyerowits, 300 N. Y. 125 * * *).”
Finally, although there is admittedly some superficial appeal to it, we are not persuaded by appellants’ contention that the combination of the two-year hiatus between applications and the 15% maxinmm increase during any two-year period is unconstitutional because it leaves the landlord in a position where he is earning less than the statutory “ 6 and 2 ” until his applications are favorably acted upon.
The basic fallacy underlying this argument — and which therefore completely destroys it — is appellants’ assumption that they are constitutionally guaranteed the right to a “ 6 and 2 ” return. There is not, and never has been, such a constitutional right, as a brief summary of the rent control legislation will quickly reveal.
In 1950, when Federal rent controls terminated in this State, the Legislature froze the maximum residential rents in New York City at their March 1, 1949 levels (Emergency Housing Rent Control Law [L. 1946, ch. 274, as amd. by L. 1950, ch. 250], § 4, subd. 1, par. [a]). The statute provided for the establishment of a rent commission which was to make regulations for “ individual adjustments in those cases where substantial and unavoidable increases in [taxes or other operating expenses, excluding a depreciation allowance] shall result in operating costs exceeding rental income ”, and in those cases where “ severe hardship will result” or where “ gross inequities” are involved (§ 4, subd. 2, par. [b]). In addition, the commission was to submit to the Legislature a rent control plan designed to effectuate the legislative purpose, and “ to maintain a system of rent controls at levels which, in the judgment of the commission, are generally fair and equitable ” (§ 4, subd. 2, par. [c]; emphasis supplied). We sustained these provisions of the statute against constitutional attack, despite the absence of a guaranteed “ 6 and 2 ” return (Teeval Co. v. Stern, 301 N. Y. 346, 359-362, supra).
In 1951 the State law was amended and the maximum residential rents in New York City were set at their March 1, 1950 levels (§ 4, subd. 1, par. [b], as amd. by L. 1951, ch. 443). Pro *492 vision was also made, for the first time, for individual adjustments where the rental income yielded a net annual return of less than 4% of the valuation of the property; a depreciation allowance of 2% of the value of the buildings was also provided for (§ 4, subd. 4, par. [a]). The maximum adjustment which could be received within any one-year period, however, was limited to 15% (§4, subd. 4, par. [b]). In 1953 the statute was again amended to allow for individual adjustments in cases where the net annual return was less than 6% (L. 1953, ch. 321, § 6); the 15% limitation on the total increases granted during any one year was retained (L. 1953, ch. 321, § 7). The “ 6 and 2 ” provision has remained in the law to the present date.
From the foregoing summary, two significant factors are apparent: first, there has been a gradual relaxation of the rent control measures, affording landlords a greater return on their investments, and it was not until the more favorable provisions (i.e., for a “ 6 and 2 ” return) were found to have been abused that new restrictions were adopted to combat this evil.
Secondly, it should now be clear that there is no constitutional guarantee of a “ 6 and 2 ” return. The Constitution merely mandates that a landlord earn a reasonable return. The question of the precise return to which a landlord is entitled has, as demonstrated, been the subject of constant legislative revision. The “ 4 and 2 ” return, as well as the “ 6 and 2 ” return, is well within the constitutional limits — and this is so even though the “ 6 and 2 ” return must be discounted by the enforced waiting period. It is unnecessary for the disposition of these appeals to determine at what point a return would fall within the constitutional proscription. These are not cases where we can say that the returns are not generally fair and equitable.
Accordingly, the judgments appealed from should be affirmed, with costs.
Chief Judge Desmond and Judges Dye, Fuld and Foster concur with Judge Froessel ; Judges Van Voorhis and Burke dissent and vote to reverse upon the ground that the legislation here goes far beyond the reasonable regulation of rents and to a degree which, as a matter of law, impairs its validity.
In each case: Judgment affirmed.

. This, of course, is not the only provision for an adjustment of maximum rents. Section Y41-5.0 (subd. g, par. [1], subpars. [b]-[j]) provides for rent increases based among others upon such factors as substantial rehabilitation, capital improvements, increased occupancy, and unavoidable increase in operating expenses. These are not challenged.

. That is, the “ sale must be bona fide as a result of an arm’s length transaction ; on normal financing terms; at a readily ascertainable price and unaffected by special circumstances ”, It does not mean “ that the subject property need be appraised in the manner followed in condemnation or tax proceedings ” (Matter of Realty Agency v. Weaver, 7 N Y 2d 249, 252, 255).

. The Minority Report of the Joint Legislative Committee on Rents and Rental Conditions was “ of the opinion that these irreducible changes in the Rent Control Law are necessary if certain flagrant abuses recognized to exist should be corrected. They are: [a two-year ownership condition to filing and a two-year hiatus between hardship applications.] ” (See N. Y. Legis. Doe., 1961, No. 23, p. 30.)