130 N.J. Super. 569 (1974)
328 A.2d 26
LEONE MANAGEMENT CORP., A NEW JERSEY CORPORATION, ET AL., PLAINTIFFS,
v.
BOARD OF COMMISSIONERS OF THE TOWN OF WEST NEW YORK, ET AL., DEFENDANTS. LEONE MANAGEMENT CORP., A NEW JERSEY CORPORATION, ET AL., PLAINTIFFS,
v.
BOARD OF COMMISSIONERS OF THE TOWNSHIP OF NORTH BERGEN, ET AL., DEFENDANTS. KEEN REALTY INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
MAYOR AND BOARD OF COMMISSIONERS OF THE TOWN OF WEST NEW YORK, ET AL., DEFENDANTS. JUSTIN C. HARRIS, ET AL., PLAINTIFFS,
v.
MAYOR AND BOARD OF COMMISSIONERS OF THE TOWNSHIP OF NORTH BERGEN, ET AL., DEFENDANTS. BELFER REALTY ASSOCIATES, A LIMITED PARTNERSHIP OF NEW JERSEY, PLAINTIFF,
v.
MAYOR AND BOARD OF COMMISSIONERS OF THE TOWNSHIP OF NORTH BERGEN, DEFENDANTS. SAMO HOLDING CORP., PLAINTIFF,
v.
MAYOR AND BOARD OF COMMISSIONERS OF THE TOWNSHIP OF NORTH BERGEN, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 17, 1974.
*572 Mr. Laurence B. Orloff for plaintiff Leone Management Corp. (Messrs. Hannoch, Weisman, Stern & Besser, attorneys).
Mr. Kenneth R. Blane for defendant Town of West New York (Mr. John Tomasin, attorney).
Mr. Sheppard A. Guryan for plaintiffs Justin C. Harris et al., Samo Holding Corp. and Keen Realty, Inc. (Messrs. Lasser, Lasser, Sarokin and Hochman, attorneys).
Mr. Robert Feldman for plaintiff Belfer Realty Associates (Messrs. Wolfberg, Elgart, Schwartz, Van Sickle and Feldman, attorneys).
Mr. Leon S. Wolk for defendants Mayor and Board of Commissioners of the Township of North Bergen, et al.
*573 Mr. Kenneth E. Meiser for New Jersey Tenants Organization, as amicus curiae (Camden Regional Legal Services, Inc., attorney).
LARNER, A.J.S.C.
These cases involve an attack by owners of many multiple-family dwellings upon certain provisions of amendments to the rent stabilization ordinances of the municipalities of West New York and North Bergen. Since the ordinance provisions are similar and the legal issues are common, the cases were consolidated for the purpose of hearing the motions addressed to the validity of the sections under attack.
The matters were heard on plaintiffs' motion for summary judgment by which they contend that the ordinances are facially unconstitutional in several respects and should therefore be set aside as a matter of law.
West New York and North Bergen, as many other municipalities in this State, adopted rent stabilization ordinances shortly after the termination of federal rent controls on January 11, 1973. These ordinances were based upon a finding of a housing emergency and pursuant to local police power approved in Inganamort v. Ft. Lee, 62 N.J. 521 (1973). The pattern of these ordinances involved a freezing of rents in occupied dwelling units at the level which obtained on January 11, 1973, with provisos for increases because of the impact of inflation upon the economy and increased costs of building operations.
In addition to provision for upward rental modification based upon tax increases, capital improvements and hardship pleas, the municipal ordinances authorized an automatic annual increase equal to the difference between the Consumer Price Index (C.P.I.) as of the time of the commencement of the tenancy and the termination of the tenancy.
The use of the C.P.I. as the criterion for permissible rent increases was initially attacked by landlords in other litigation as an arbitrary and unreasonable measure of increased costs. In contrast, municipalities urged in the context of *574 that litigation that the C.P.I. was a reasonable yardstick to measure the effect of inflation and a reasonable means of rent adjustment in recognition of the competing interests of the tenant and landlord in this economic era.
In any event, the use of the C.P.I. was sustained in Albigese v. Jersey City, 127 N.J. Super. 101 (Law Div. 1974), aff'd 129 N.J. Super. 567 (App. Div. 1974), as a reasonable means of regulation within the ambit of the legislative discretion vested in local government.
The facts of economic history in this country and in this area in 1973 and 1974 produced a reversal of position on the part of landlords and municipal governing bodies which has led to the current litigation. The C.P.I. as of March 1974 showed an increase of 10.5% over the index figure of March 1973. Under the existing ordinances this produced an automatic increase of 10.5% in rentals subject to the ordinance. As a consequence there resulted a wave of protest from tenants to their elected local officials. And in response thereto, each municipality proceeded to adopt amendments which sought to cut back the size of rental increases permitted by the underlying ordinances through the adoption of a percentage ceiling on the C.P.I. increase and a percentage ceiling on all other increases. In addition, there were other modifications in an effort to control the rent increases available to the landlord. (These amendments and the flood of problems and litigation in this area stem from the delegation of power to municipalities to legislate in this area. See Judge Conford's dissent in Inganamort at 545 of 62 N.J.)
The experience over the past year has thus induced the landlords to reverse their position and opt for the fairness and reasonableness of the C.P.I. standard while the tenants and municipal fathers urge that the C.P.I. is excessive and inappropriate as a guide to measure permissible rent increases.
As in all litigation involving municipal ordinances in this field of regulation, there are presented attacks upon *575 many of the legislative provisions. For the purpose of clarity each of them will be treated separately.

Limitation of C.P.I. increase to 5%, hardship and major improvement increase to 10%, and overall rent increase to 15%
The amendatory ordinance of North Bergen adopted on May 28, 1974 (§ 1(a) and § 3(c)) and the parallel amendment of the ordinance of West New York adopted on March 30, 1974 (§ 2(d) (e) and § 4) authorize a cost of living increase based upon the percentage of annual C.P.I. increase with a proviso that the maximum permissible increase on this score shall be 5%. In addition, the ordinances authorize application to the Rent Leveling Board for increases based on hardship and/or major capital improvements with a ceiling limitation of 10% in each category. They also provide that the combined rent increases allowable in all three categories shall not exceed 15% in any one year.
The major thrust of the property owners in their attack on the legal validity of the ordinances centers on the aforesaid percentage limitations on allowable increases. They assert that the creation of these ceilings are arbitrary and unreasonable in that they fail to guarantee a fair return on investment. This objection is not founded upon a factual basis applicable to any particular property or any particular owner. It is bottomed rather on the contention that any percentage limitation on permissible rent increases is unconstitutional on its face and beyond the power of valid regulation by municipal government.
In approaching the question of the validity of municipal legislation the court is constrained to accord the legislation the presumption that it is reasonable, valid and constitutional. And the burden therefore of rebutting this presumption and establishing arbitrariness and unreasonableness rests with those who assert it. Shell Oil v. Bd. of Adjustment, Hanover Tp., 38 N.J. 403, 413 (1962); Moyant *576 v. Paramus, 30 N.J. 528, 547 (1959); Guill v. Mayor, 21 N.J. 574 (1956); Kozesnik v. Montgomery Tp., 24 N.J. 154, 167 (1957).
Assuming this burden, plaintiffs urge that a flat percentage limitation on rent increases per se invades the basic tenet of constitutional validity, namely that the legislation must "allow landlords a fair and equitable return upon their investment," citing Foti v. Heller, 48 N.J. Super. 57, 65-66 (App. Div. 1957), and Friedman v. Podell, 21 N.J. 100, 104 (1956). See also: Jamouneau v. Harner, 16 N.J. 500, 527 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); dissent of Judge Conford in Inganamort, supra at 544-546 of 62 N.J.
This argument is made not upon a factual underpinning reflecting an unconstitutional deprivation of property of the landlord but upon an anticipatory fear that conditions may arise in the future where the respective limitations may deprive a landlord of a fair return. As a corollary, plaintiffs contend that the use of the C.P.I. in the basic rent control ordinances as a means of measuring increases justified by the impact of inflation prohibits the imposition of an arbitrary ceiling of 5% on such increases.
As noted in Albigese, supra, 127 N.J. Super. at 122, the governing body of a municipality has the discretion to utilize any mechanism relating to the control of rents albeit experts and other legislatures, state or federal, have adopted legislation or administrative regulations which are attuned to the rate of return to the landlord either on investment or on gross rentals. See, for example, N.J.S.A. 2A:42-74 et seq., N.J.S.A. 2A:42-29(h) (expired). Although the methods utilized in connection with rent or price control in the past may be wiser or more preferable, they do not inhibit local government from utilizing other methods; Cohen v. Beneficial Loan Corp., 337 U.S. 541, 550-551, 69 S.Ct. 1221, 1228, 93 L.Ed. 1528 (1948). And it should be observed that when this court approved the use of the C.P.I. as a mechanism for measuring rent increases *577 in Albigese, it did not thereby preempt the municipalities from utilizing other methods of control as their experience and judgment might dictate.
The United States Supreme Court has sustained the constitutionality of maximum rents established by the Office of Price Administration during World War II which were generally "fair and equitable" even though they might not guarantee a profit to a particular landlord. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1943); Woods v. Miller Co., 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596 (1948). See also, Helmsley v. Fort Lee, 362 F. Supp. 581 (D.N.J. 1973).
It is of further interest to note that federal Phase II price control regulations limited annual rent increases to a 2 1/2% figure (6 C.F.R. 301.101 (a) (1973 ed.)) plus certain pass-through increases for taxes and capital improvements, and that the State of Maryland has adopted a rent control statute which provides for a 5% ceiling on increases beyond the base rental which existed on January 11, 1973 together with approval for passing through increases in taxes, water and sewer charges and capital improvements. 5A Md. Annot. Code, art. 53, § 45(a), (b) (Supp. 1973.)
In Equitable Trust v. Bowles, 143 F.2d 735, 738 (1944) the Emergency Court of Appeals created during World War II stated:
We find no requirement in any part of the Act that the Administrator must maintain any ratio or balance between the controlled levels of rents and those of wages and commodity prices. On the contrary, it is required only that maximum rents shall be generally fair and equitable and shall effectuate the purpose of the Act.
As has been observed, the ordinances before the court provide for basic rent increases because of the increase in the C.P.I. and because of capital improvements and/or hardship. In each instance, the increase is controlled by a percentage ceiling together with a provision for a maximum ceiling increase for all causes of 15%. Furthermore, the *578 landlord is entitled to a tax surcharge in the event of tax increases. The mere imposition of ceilings in itself does not invalidate the legislation, for if a municipality has the power because of a housing emergency to control and regulate rentals it clearly has the power to limit them. It may in its judgment impose ceilings as one of the methods of control. Such price and wage limitations have been uniformly sustained as constitutionally valid where the existing conditions authorize controls for the public welfare. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1943); Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968); Del. Valley Apt. v. United States, 350 F. Supp. 1144 (E.D. Pa. 1972); Amalg. Meat Cutters v. Connally, 337 F. Supp. 737 (D.D.C. 1971); I.L.F.Y. v. City Rent & Rehab. Admin., 11 N.Y.2d 480, 230 N.Y.S.2d 986, 184 N.E.2d 575 (Ct. App. 1962).
The distillation of the legal principles applicable to rent control leads to the inevitable conclusion that the mere imposition of ceilings is not per se unlawful or unconstitutional. There is nothing inherently arbitrary or unreasonable in the mechanism of percentage ceilings as a means of regulation. In the absence of a factual showing that the application of either the 5% ceiling or the 10% ceiling or the combined ceiling of 15% fails to provide a fair and equitable return to the landlord, the court is powerless to interfere with the municipal judgment expressed in the ordinances. On the face of the ordinances, the presumption of validity together with the pattern of permissible increases sustain a rational basis for the percentage ceilings imposed.
Plaintiffs have failed to demonstrate the contrary as a matter of law. Hence summary judgment is manifestly inappropriate on this issue.

Tax Surcharge
The West New York ordinance (§ 5) and the North Bergen ordinance (§ 5(d)) authorize a tax surcharge for any annual increase in real estate taxes. A perusal of the *579 ordinance provisions makes it clear that the surcharge is allowable in addition to the rent increases already discussed and is not subject to the percentage limitations imposed upon such rent increases.
The formula for the tax surcharge in the West New York ordinance directs the landlord to divide the increase by the number of square feet in the building to arrive at the tax increase per square foot, with the tenant's liability measured by the multiplication of this figure by the number of square feet in the apartment. Thus, the formula fails to allocate among the tenants the burden of increased taxes applicable to the common areas of the building. As the court stated in Albigese, supra at 120 of 127 N.J. Super. "[This] ordinance provision unfairly compel[s] the landlord to absorb a substantial portion of a tax increase."
The common areas of an apartment dwelling produce no additional income for the landlord and are a necessary adjunct to the building for the full use and enjoyment by the tenants occupying the apartments. If a landlord is entitled to be reimbursed for tax increases, he should be permitted to recoup the entire increase from the tenants who occupy the building through a formula which computes the unit increase per square foot by the rentable space in the building or other alternative techniques to achieve the same purpose. (See Jersey City ordinance provision described in Albigese, supra at 120).
The requirement that a landlord share in the burden of a tax increase without allowing him to pass on the entire increase to tenants lacks a rational basis for existence. It is therefore arbitrary and invalid on its face and subject to judicial correction on summary application.
The North Bergen ordinance is couched in slightly different language. It provides that the per square foot increase to be applied to the area of each apartment shall be computed by dividing the total area of "housing space" into the total tax increase. If by "housing space" the municipality intended to define the total space occupied by tenants the *580 provision is valid, for that would distribute the total increase among all the tenants. If however "housing space" is intended to encompass the total space in the building including common areas, the provision is subject to the same infirmity as the West New York ordinance.

Tax Refunds
The West New York ordinance provides for a tax refund of 75% of any net tax reduction obtained by the landlord through a tax appeal or through the normal processes of diminution of assessment or tax rate. (§§ 9 and 10). It is manifest that this refund is payable only if a tax surcharge has been paid by the tenant and to the maximum extent of said tax surcharge. Counsel for the municipality has conceded that such is the intent and purpose of the refund provisions. In case of doubt, they are hereby construed in that manner; and as such there can be no objection to their validity. The computation should be made on the same basis as that properly applied to the tax surcharge.
Plaintiffs in the North Bergen case have not contested in briefs or in oral argument the tax refund provisions which are contained in the amendments adopted on June 21, 1973 (§ 5(h) and (1)) and hence the court abstains from passing upon their validity.

Provisions Relating to Eviction
Both ordinances (West New York § 18  North Bergen § 5(s)) seek to establish criteria for the right of a landlord to recover possession of premises occupied by a tenant. It is clear that the Legislature has preempted the field of dispossess actions, mandating the procedures and grounds for same. See N.J.S.A. 2A:18-53 et seq. as amended in 1974.
As a consequence, a municipality has no power to adopt local legislation dealing with the jurisdiction of state or county courts and the bases for the exercise of their jurisdiction *581 in eviction proceedings. As observed by Chief Justice Weintraub in Summer v. Teaneck, 53 N.J. 548 (1969):
A municipality may not contradict a policy the Legislature establishes. Auto-Rite Supply Co. v. Mayor and Township Committeemen of Woodbridge, 25 N.J. 188 (1957). Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field. This follows from the basic principle that local government may not act contrary to State law. But an intent to occupy the field must appear clearly. Kennedy v. City of Newark, 29 N.J. 178, 187 (1959). It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power. Masters-Jersey, Inc. v. Mayor and General Council of Borough of Paramus, 32 N.J. 296 (1960). [at 554]
To the same effect, Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348, 351 (1971); Mogolefsky v. Schoem, 50 N.J. 588, 598 (1967).
The provisions of the ordinances relating to eviction constitute an illegal usurpation of power beyond the authority of the municipalities. They are therefore set aside as void.

Ordinance Standards Relating to Increases for Hardship and Major Capital Improvements
In both ordinances provision is made for a rent increase based upon "hardship." The North Bergen ordinance authorizes a hardship application in the event that a landlord "cannot meet his mortgage payments and maintenance," while West New York's ordinance reads "in the event of hardship or if a landlord cannot meet his mortgage payments and maintenance" he may apply for a rent increase. In addition, both ordinances authorize a rent increase based on "major capital improvements," with the amount determined by the average monthly cost of the improvement derived from its useful life as claimed for income tax purposes.
*582 Plaintiffs assert that these provisions for hardship and capital improvement increases are unconstitutional because they do not contain sufficient standards or particular definitions for guidance of the rent control board to whom the municipality delegated the power of decision.
The term "hardship" is, of course, a flexible standard which allows the board to exercise its discretion based upon a factual showing by the landlord. "If a landlord cannot meet his mortgage payments and maintenance" constitutes a more definitive standard which is demonstrable by financial data submitted to the board. "Major capital improvements" as a definition may inherently contain a potential for different conclusions by a factfinder depending upon the character of the improvement.
The test of validity of standards, however, is not whether the ordinance standards are so specific as to eliminate the need for the exercise of discretion on the part of the agency involved.
The exigencies of modern government have increasingly dictated the use of general, rather than minutely detailed standards and they have, for the most part, received the approval of our courts. [State v. Hotel Bar Foods, 18 N.J. 115, 124 (1955)]
General standards of similar flexibility and import have thus been sustained in the area of legislation relating to rent and other price control legislation.
For example, the guides established by the New Jersey Legislature under the State Rent Control Act of 1953 (N.J.S.A. 2A:42-14 et seq. (expired)) in establishing exceptions to rent ceilings were couched in terms of "reasonable" and "necessary and proper to effectuate the purposes" of the act. These standards were held adequate and lawful in Jamouneau v. Harner, 16 N.J. 500 (1954), and Grenewicz v. Ligham, 34 N.J. Super. 1 (App. Div. 1955).
In the price control statutes during World War II, 50 U.S.C.A. App. § 901 et seq., sustained by the United States Supreme Court, the standard for establishing maximum *583 rents to guide the Administrator was merely that they be "generally fair and equitable." See Lakemore Co. v. Brown, 137 F.2d 355 (Emerg. Ct. App. 1943); Bowles v. Willingham, supra; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).
The standard of "exceptional and undue hardship" has been sustained as a valid basis for delegation of power to a board of adjustment in connection with a zoning variance under N.J.S.A. 40:55-39(c). Ward v. Scott, 11 N.J. 117 (1952). The same case also sustained the validity of the standard of "special reasons" for a subsection (d) variance.
The Board of Public Utility Commissioners has been guided by general standards such as "public convenience and necessity" (N.J.S.A. 48:2-15) and "just and reasonable" (N.J.S.A. 48:2-21, 48:2-25).
The synthesis of the basic principles applicable to the legislative standards which comply with constitutional requirements can be found in the words of Justice Jacobs in Motyka v. McCorkle, 58 N.J. 165 (1971):
While we have continued the form of the traditional requirement that delegation must have a sufficient accompanying standard, we have consistently sustained general standards and have not hesitated to imply them. See Ward v. Scott, 11 N.J. 117, 122-128 (1952); Schierstead v. City of Brigantine, 20 N.J. 164, 169 (1955); In re Berardi, 23 N.J. 485, 491 (1957); Wes Outdoor Advertising Co. v. Goldberg, 55 N.J. 347, 350-353 (1970); State v. Owens-Corning Fiberglas Corp., 100 N.J. Super. 366, 382-384 (App. Div. 1968), aff'd, 53 N.J. 248 (1969); Ass'n of N.J. State Col. Fac. v. Bd. of Higher Ed., 112 N.J. Super. 237, 257-259 (Law Div. 1970). Indeed in recent days we have attached greater significance to the presence of procedural and judicial safeguards against unreasonable and unwarranted agency action than we have to the presence of details in the statutory standards. See Burton, et al. v. Sills, 53 N.J. 86, 91 (1968), appeal dismissed, 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969); State v. Owens-Corning Fiberglas Corp., supra, 100 N.J. Super. at 385; Esso Standard Oil Co. v. Holderman, 75 N.J. Super. 455, 474 (App. Div. 1962), aff'd, 39 N.J. 355, appeal dismissed, 375 U.S. 43, 84 S.Ct. 148, 11 L.Ed.2d 107 (1963). [at 177-178]
*584 In light of the plethora of cases sustaining the validity of statutory standards which are couched in terms as general as the ones under consideration herein, the court concludes that the use of standards such as "hardship" and "major capital improvements" are sufficient to pass constitutional muster. The nature of the subject matter is such that the generality of the prescribed standard is both necessary and justified.
The available avenues for review of the action of the rent control board by the governing body and ultimately the courts constitute appropriate and sufficient safeguards to protect landlords and tenants against arbitrary action.

CONCLUSION
The court has considered other issues raised by plaintiffs, including the legal validity of ordinance provisions relating to (1) discrimination because of exclusion of new rental units; (2) undue burden on landlord because of notice requirements relating to increases, and (3) provisions relating to application fees to rent control board, and finds them to be without merit.
Plaintiffs' motions for summary judgment will therefore be denied except for the provisions of the ordinance which have been found to be facially invalid in this opinion. Since the latter provisions are severable in substance and under the terms of the ordinances, their invalidity does not affect the legislation as a whole, and partial summary judgment will therefore be granted as to these provisions.