**VIRGIN ISLANDS URBAN RENEWAL BOARD, Plaintiff**

v.

**KENT and SYLVIA GEORGE, Defendants**

Civil No. 375C/1976

Territorial Court of the Virgin Islands

Div. of St. Croix

July 12, 1977

ROY E. PARROTT, ESQ., Assistant Attorney General, Charlotte Amalie, St. Thomas, V.I., *for plaintiff*

THOMAS L. HAMLIN, ESQ., Legal Services of the Virgin Islands, Christiansted, St. Croix, V.I., *for defendants*

FINCH, *Judge*

This matter came on before the court on plaintiff's action for debt and restitution of possession. Plaintiff is a local government agency administering urban renewal projects subsidized by the federal government's Department of Housing and Urban Development. At the time of filing of the complaint, the defendants were three months in arrears in payment of rent for an apartment in one of these federally subsidized projects.

With their general denial defendants filed a motion to dismiss on several grounds. As a result of stipulation between the parties, (in which the defendants, inter alia, acknowledged the debt) this Court is called upon to decide

one issue: to wit, whether or not federal regulations have preempted the local eviction statute and case law. The defendants contend that their monthly rental of $146.00 brings them within the strictures of Kress, Dunlap & Lane, Ltd. v. Downing, 4 V.I. 261, 193 F.Supp. 874 (D.C.V.I. 1961) which defines them as being occupants of low cost housing and as a result the plaintiff must comply with 28 V.I.R.&R. 833.6(c) which requires that it obtain a certificate of eviction from the Price and Rent Control Officer prior to pursuing its remedies at law. The plaintiff contends: (1) that 29 V.I.C. § 86, et seq. (the Urban Renewal Laws of the Virgin Islands) suspends the operation of 28 V.I.C. 831–846 (the Rent Control Law) and (2), that federal regulations preempt the local eviction laws and regulations as they apply to low cost housing. At this time it should be added that the defendants did not raise any defense they might have had in the lease agreement with plaintiff and this court takes the position that any defense arising from the contract of lease should have been raised in the pleadings or motions pursuant to 5 V.I.C. App. 1 Rule 12(b).

The Rent Control Law was enacted to prevent "profiteering and other speculative practices by some owners of housing and business accommodations" and "to prevent undue rent increases, unreasonable evictions, and any other practices relating to housing and business accommodation in the Municipality which may tend to increase the cost of living . . ." Note, 28 V.I.C. § 846. Because of an acute building shortage, the Price and Rent Control Officer was empowered to set maximum rent ceilings in an attempt to control prices where free market controls had broken down. The Rent Control Law was designed to regulate a private enterprise that previously had no controlling forces other than the demands of the open market.

In another attempt to alleviate the Virgin Islands housing shortage, the Legislature created the Virgin Islands Housing Authority and the Virgin Islands Urban Renewal Board for the express purposes of participating in federal housing programs authorized under the provisions of the National Housing Act of 1949, 12 U.S.C.A. §§ 1701 et seq. Although the Legislature did not say that the Rent Control Law did not apply to urban renewal projects, it said that the Board was:

. . . empowered and authorized to (1) enter into contracts and agreements of every kind and nature with the Federal Government for any purposes related to such programs, and shall comply with such contracts and any Federal rules, requirements, regulations and procedures, applicable to the programs; . . . and (3) otherwise to comply fully with any conditions imposed by the Federal Government upon participation by the Board in such programs, it being the intent of this chapter to enable the Board to do any and all things necessary to secure participation in the Federal programs, and Federal financial aid in such programs, and the cooperation of the Federal Government in the carrying out, undertaking, development, construction, maintenance and operation of any project, in carrying out the functions of the Board and in achieving the policies and purposes of this chapter, and to assure strict compliance by the Board with any conditions imposed by the Federal Government. 29 V.I.C. § 86(b).

Paragraph 11 of the Regulatory Agreement for Non-Profit and Public Mortgagors under section 221(d)(3) of the National Housing Act, as amended, executed by plaintiff and the Federal Housing Administration reinforces this reading of § 86(b):

Owners will comply with . . . all requirements imposed by or pursuant to the Regulations of the Department of Housing and Urban Development (24 CFR, Subtitle A, Part 1) issued pursuant to that title, and regulations issued pursuant to Executive Order 11063.

To consider the rental amount in isolation disregards the purposes and goals of the Rent Control legislation and the urban renewal legislation of the Virgin Islands.

This inquiry should also consider federal legislation on the subject. The conclusion to which an examination of federal legislation must lead is even more compelling. Federal Regulations 49318, October 22, 1975, codified as 24 CFR 403 (Revised April 1, 1976) distinguishes between local laws as they apply to unsubsidized and subsidized insured housing projects. If the project is unsubsidized local statutes must be preempted on a case by case basis following a determination of the need for preemption by the Department of Housing and Urban Development. 24 CFR 403.1(a). Subsidized insured projects receive a different treatment.

24 CFR 403.1(a) *Scope and Effect of Regulations:*

The regulation of rents for a project coming within the scope of "Subpart B—Unsubsidized Insured Projects" is preempted under the regulations only when the Department determines that the delay or decision of the local rent control board, or other authority regulating rents pursuant to state or local law (hereinafter referred to as board) jeopardizes the Department's economic interest in a project covered by that subpart. The regulation of rents for projects coming within the scope of *"Subpart C—Subsidized Insured Projects" is preempted in its entirety by the promulgation of those regulations.* (Emphasis added.)

On its face, this section clearly preempts local rent control statutes for all projects unless they fall into the category governed by Subpart B.

The only criterion for the application of Subpart B is that the project have a mortgage "insured or held by HUD" and that Subpart C not apply, 24 CFR 403.4. The difference between Subparts B and C is the nature of the payments which are "subsidies". A broad range of payments by the Federal Housing Administration constitutes a subsidy and

brings the recipient project within the scope of Subpart C.

24 CFR 403.8 *Applicability:*

This subpart applies to all projects with mortgages insured or held by HUD, which received a subsidy in the form of: (a) interest reduction payments pursuant to Section 236 of the National Housing Act; (b) below-market interest rates pursuant to Section 221(d)(3) and (5) of the National Housing Act; (c) direct loans at below-market interest rates pursuant to Section 202 of the Housing Act of 1959; or (d) rent supplement payments pursuant to Section 101 of the Housing and Urban Development Act of 1965 and/or housing assistance payments pursuant to (1) § 8 of the United States Housing Act of 1937 in effect prior to January 1, 1975, if ten percent or more of the units in a project receive either rent supplement payments or housing assistance payments.

The documents admitted into evidence and the testimony of plaintiff's witnesses indicate and I so find, that the Water Gut Homes are a § 221(d)(3) project, that the mortgage is insured under § 221(d)(3) and subsidized at a 3% interest rate which is below the rates normally charged on the interest market.

As a § 221(d)(3) project, 24 CFR 403.9 *Rental Charges* also applies:

The Department finds that it is necessary and desirable to minimize defaults by the mortgagor in its financial obligations with regard to projects covered by this subpart, and to assist mortgagors to preserve the continued viability of those projects as a housing resource for low-income families. The Department also finds that it is necessary and desirable to protect the substantial economic interests of the Federal Government in these projects. Therefore, the Department concludes that it is in the national interest to preempt, and it does hereby preempt, the entire field of rent regulation by local rent control boards, (hereinafter referred to as board), or other authority acting pursuant to state or local law as it affects projects covered by this subpart.

Defendants argue that the failure of the Secretary to formulate federal procedures for evicting tenants from

"221(d)(3) projects" when he promulgated regulations in the areas of eligibility for housing, propriety of rent increases, and methods of operation indicates a lack of intent to preempt eviction regulations under local rent control laws. Mere failure to outline specific eviction proceedings does not support the proposition that eviction proceedings have not been preempted. Defendant ignores that part of 24 CFR 403.9 which refers to: *"the entire field of rent regulation* by local rent control boards, . . ."* (Emphasis added.) The Secretary, in the General Provisions, makes clear that the "entire field of rent regulation" encompasses eviction.

24 CFR 403.1(b)

Any state or local law, ordinance, or regulation is without force and effect insofar as it purports to regulate rents of (i) projects for which a determination of preemption has been made pursuant to Subpart B or (ii) projects coming within the scope of Subpart C or D. *Compliance with such law, ordinance, or regulations shall not be required as a condition of, or prerequisite to, the remedy of eviction, and any law, ordinance, or regulation which purports to require such compliance is similarly without force and effect.* (Emphasis added.)

To bring suit under 28 V.I.C. § 840, a plaintiff must show compliance with the remainder of the subchapter in regard to his rates of rent. Title 28 V.I.R.R. § 833–6 requires that the plaintiff secure a certificate from the Price and Rent Control Officer "permitting the landlord to pursue his remedies at law at the expiration of the waiting period specified. . ." During the waiting period, the Price and Rent Control Officer will conduct an investigation "to determine . . . that the eviction would not be inconsistent with the purposes of this section". The requirements of 28 V.I.C. § 840 and 28 V.I.R.R. § 833–6 are in direct conflict with 24 CFR 403.1(b). Where there is a direct conflict, federal law prevails.

While there appear to be no cases which raise the question of preemption of state and local eviction statutes

by federal regulation, several decisions have been written in the New Jersey Superior Court which discuss preemption of a municipality's rent control ordinances in the face of legislation by the New Jersey State Legislature. In Leone Management Corp. v. Board of Commissioners of the Town of West New York, 130 N.J. Super 569, 328 A.2d 26 (1974), the township had enacted ordinances which sought to establish criteria for a landlord to bring an action in eviction. The court held that the Legislature had "preempted the field of dispossess actions, mandating the procedures and grounds for same." Pertinent to this case are the standards, compiled from previous cases, used by the court:

A municipality may not contradict a policy the Legislature establishes. Auto-Rite Supply Co. v. Mayor and Township Committeemen of Woodbridge, 25 N.J. 188, 135 A.2d 515 (1957). Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field. This follows from the basic principle that local government may not act contrary to State law. But an intent to occupy the field must appear clearly. Kennedy v. City of Newark, 29 N.J. 178, 187, 148 A.2d 473 (1959). It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power. Masters-Jersey, Inc. v. Mayor and General Council of Borough of Paramus, 32 N.J. 296, 160 A.2d 841 (1960). Citing Summer v. Teaneck, 53 N.J. 548, 555, 251 A.2d 761, 764 (1969) in Leone Management Corp. at 328 A.2d 32.

In the cited decisions, courts have been moved by (1) statements of policy; (2) express authorization or prohibition of an act creating a direct conflict between the laws in question; and (3) a clear intent to occupy the field. These standards are not unlike those cited by the defendant in his memorandum.

Analyzing the question of preemption by these standards, the Federal Government has preempted the local law. First, the policy decision to preempt local rent control as to "221(d)(3) projects" is set out in 24 CFR 403. Second, 24 CFR 403.1(b) expressly authorizes a landlord to bring an action in eviction without complying with local laws, or the procedures outlined in 28 V.I.R.R. § 833–6. Third, a declaration that such laws are "similarly without force and effect" indicates a clear intent to preempt. By abrogating local rent control board proceedings, the plaintiff is left to the common law or statutory requirements for an action in eviction. Statutes will not fall merely on the grounds that they lack specific and precise standards. A reasonable general standard is acceptable and valid. Leone Management Corp. supra at 33.

The cases cited by defendant in support of his argument that the Federal Government has not preempted local rent control authority do not control the issues in this case, nor are they dispositive of the broad issue "whether the operation of local rent control has frustrated the purposes and objectives of the National Housing Act by regulating rents in § 221(d)(3) projects". The issue as framed was decided in Druker v. City of Boston, et al., 410 F.Supp. 1314 (D.C. Mass. 1976). The court ruled:

. . . the difference in the procedures used by the Rent Board and the delay and expense inherent in this additional step in the rent setting procedure have created an impermissible conflict between the federal and local systems. Accordingly, the orders of the Rent Board are invalid as to plaintiff's project. . . . The fact is that the two schemes of regulation are in conflict; thus the federal program must preempt the field. Ibid, at 1320, 1321.

The court discussed fully the significance of the conflict, particularly the "adverse financial consequences" lengthy local procedures had upon a § 221(d)(3) project owner's ability to generate finances for purposes of debt service, expenses and investor return. Such observations are

equally true when the project faces undue delay in evicting the non-paying tenant.

On the basis of the arguments outlined above, let judgment issue consistent therewith.

### JUDGMENT

For the reasons stated in the memorandum opinion of even date herewith and upon the findings of fact and conclusions of law as stated herein, it is hereby

ORDERED and ADJUDGED that plaintiff have judgment against defendants in the sum of $1,314.00 and that each party shall bear their own costs.